# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

ROSEVELT BOWENS,           )
                           )
    Plaintiff,       )
                           )
v.                         )           CV416-049
                           )
SHERIFF STEVE C. SIKES,    )
*et al.*,                  )
                           )
    Defendants.      )

## REPORT AND RECOMMENDATIONS

The undersigned received a letter from *pro se* plaintiff Rosevelt Bowens objecting to an entry on the docket.[1] Doc. 7. Because he seeks judicial relief, the Court construes his letter as a Motion for Reconsideration. The Court granted his motion to proceed *in forma pauperis* (IFP) and ordered him to return the required Prison Litigation

---

[1] His letter is improper. *See* Fed. R. Civ. P. 7(b)(1) (requires that requests for judicial action be made "by motion."); *see also* Fed. R. Crim. P. 47(a) ("A party applying to the court for an order must do so by motion"). As this Court has repeatedly stated elsewhere, those who seek judicial action must file a *motion*, not send a letter to a judge's chambers. Letters can get lost, while motions get filed and thus create a public record in this, a court of *record*. *See In re Unsolicited Letters to Federal Judges*, 120 F. Supp. 2d 1073 (S.D. Ga. 2000). And when motions get placed on the Court's "pending motions" list, they get considered, while letters can be overlooked or forgotten.

Reform Act ("PLRA") forms, 28 U.S.C. § 1915(a)(2). Doc. 3. He complied with that directive, docs. 4 & 5, and accordingly the Clerk "terminated" the deadline for returning the forms, and made a docket entry recording that event. Bowens thinks this terminated his lawsuit. It did not. Since Bowens' action remains pending, and the deadline for his return of the PLRA forms was properly cancelled, there is no action for the Court to take. Bowens' Motion for Reconsideration, therefore, is **DENIED** as moot.

Since Bowens has completed his IFP filings, docs. 4-5, the Court now screens his complaint under 28 U.S.C. § 1915A.

## I. BACKGROUND

Plaintiff is a Liberty County Jail inmate. Doc 1 at 3; doc. 7 at 1, 3. He brings this § 1983 action against the Jail, Liberty County Sheriff Steve Sikes, and two jail administrators. Doc. 1 at 1, 4. Liberally construing his allegations[2], Bowens alleges violations arising out of unsafe or unsanitary conditions, problems with the jail's grievance

---

[2] At the preliminary screening stage, the Court liberally construes *pro se* complaints and takes plausible factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, [cit.], and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quotes and cites omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

procedure, excessive noise, the condition of the food served at the jail, and lack of access to legal materials. *See id.* at 5, 7-13. He seeks injunctive relief and compensation for his "pain and suffering." *Id.* at 6.

## II.  ANALYSIS

The Prison Litigation Reform Act requires federal courts to screen all civil cases in which a prisoner seeks redress from a government entity or official. *See* 28 U.S.C. § 1915A. The Court must screen out any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. *Id.* Similarly, 42 U.S.C. § 1997e(c)(1) allows the Court to dismiss any prisoner suit brought "with respect to prison conditions," for the reasons stated in § 1915A. The Court thus examines Bowens' Complaint to determine whether he has stated any claim for relief under 42 U.S.C. § 1983.

### A.  Claims against Sheriff Sikes

The Complaint does not include any specific allegations concerning Sheriff Sikes, only the general conditions of Bowens' confinement. *See* doc. 1. Claims under § 1983, however, cannot be based on theories of vicarious liability or *respondeat superior*. *Polk Cnty. v. Dodson*, 454 U.S.

3

312, 325 (1981). A § 1983 plaintiff must demonstrate that an individual defendant participated in the alleged constitutional violation or show a causal connection between the official's acts or omissions and the constitutional violation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). In the absence of *any* allegations against Sheriff Sikes, Bowens' claims against him should be **DISMISSED**.

## B. Claims against Liberty County Jail

Liberty County Jail is not an entity subject to suit under § 1983. *See Lovelace v. DeKalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (county police department not a legal entity subject to suit); *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 1992) (sheriff and police departments not usually considered legal entities subject to suit); *Bembry v. St. Lawrence*, 2007 WL 4256984 at * 2 (S.D. Ga. Nov. 30, 2007) ("Chatham County Jail [] is not an entity subject to suit under § 1983"). Bowens' claims against Liberty County Jail, therefore, should be **DISMISSED**.

## C. Official Capacity Claims

Bowens' remaining claims, now against only defendants Hein and Boyd, do not state clearly whether those defendants are sued in their

official or individual capacities. *See* doc. 1 at 5, 7-11. To the extent that Bowens intends to sue the remaining defendants in their official capacities, he cannot recover money damages. "A state is immune from a suit for damages in federal court by one of its own citizens, *Hans v. Louisiana*, 134 U.S. 1, 14-17 . . . (1890), and this sovereign immunity extends to an official when he acts as an 'arm of the State,' *Manders v. Lee*, 338 F. 3d 1304, 1308 (11th Cir. 2003) (en banc) . . . ." *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016). Under Georgia law, county sheriffs and their deputies are often acting as "arms of the State" when managing county jails.[3] *See Manders*, 338 F.3d at 1328 (sheriff acts an as arm of the State when establishing and implementing use-of-force policy at county jail); *Lake*, 840 F.3d at 1344 (finding deputy sheriff

---

[3] The application of sovereign immunity to state officers is function-specific. *See Lake*, 840 F.3d at 1337 (quoting *Manders*, 338 F.3d at 1308) (first step in applying *Manders* factors is to "determine 'the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise'"); *see also Stanley v. Broward Cnty. Sheriff*, ___ F.3d ___, 2016 WL 7229745 (11th Cir. Dec. 14, 2016) (describing "arm-of-the-state analysis" under *Manders* as "function-specific"). In *Lake*, the Eleventh Circuit determined that the provision of food at county jails was a state function, in part because it is mandated by state statutes. *See* 840 F.3d at 1340-42 (O.C.G.A. §§ 42-4-32 and 42-5-2 impose duties on county sheriffs, and not counties, evidencing state function). Those same state laws govern sanitation and medical care in county jails. *See* O.C.G.A. § 42-4-32(c) (requiring sanitation inspections by "[a]n official from the Department of Public Health or an officer designated by the commissioner of public health"); § 42-5-2 (requiring "the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention").

5

acting as an arm of the State when making determinations about meals provided to inmates at a county jail). Since Bowens challenges actions taken in furtherance of state functions, *see supra* n. 3, to the extent that he intended to sue defendants in their official capacities, his request that the Court "make [defendants] pay me Ten-thousand dollars for my pain and suffering," doc. 1 at 6, should be **DISMISSED**.

For the reasons explained in detail below, Bowens fails to state any claim upon which relief might be granted. Accordingly, his claim for compensatory damages for his "pain and suffering" fails, even if he intended to sue defendants individually.

## D. Exhaustion

Dismissal of Bowens' remaining conditions-of-confinement claims on exhaustion grounds is not proper at this stage, even though it appears that he has not exhausted available administrative remedies. Exhaustion of administrative remedies is a pre-condition to suit under § 1983. *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856-7 (2016) ("the PLRA's text suggests no limits on an inmate's obligation to exhaust" administrative remedies, thus "a court may not excuse a failure to exhaust"). Generally, failure to exhaust is an affirmative defense, but

"[a] complaint may be dismissed for failure to exhaust if the lack of exhaustion appears on [its] face." *Dollar v. Coweta Cnty. Sheriff Office*, 446 F. App'x 248, 251-2 (11th Cir. 2011) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)). The exhaustion requirement, however, is limited to "available" remedies. *Ross*, 136 S. Ct. at 1858 ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). So even where a Complaint facially shows that administrative remedies were not exhausted, dismissal is improper if it also alleges that further remedies were unavailable. *See Dollar*, 446 F. App'x at 252 (reversing § 1915A dismissal for failure to exhaust, despite plaintiff's allegation "that he did not file a grievance," in light of allegation that "officials prevented [plaintiff] from filing a grievance, and thus those grievance procedures may not have been 'available' . . . for § 1997e(a) purposes").

Bowens' allegations of exhaustion, at least on preliminary review, are sufficient. While it is clear that he did not exhaust his administrative remedies, doc. 1 at 4 (when asked whether he "appeal[ed] any adverse decision to the highest level possible," Bowens checked "No"), he alleges that further administrative remedies were not "available" to him.

7

*Compare Ross*, 136 S. Ct. at 1859 ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates."), *with* doc. 1 at 7 (alleging that jail employees "refuse on [sic] giving me [a grievance form]" and "[e]verytime you put in a inmate request form they do not respons back like they suppose to [sic]."). Thus, Bowens' Complaint alleges that he exhausted the available remedies -- that's enough to survive screening.

## E. Grievance Procedure[4]

Bowens alleges that jail staff violated his constitutional rights by failing to follow established grievance procedures. *See* doc. 1 at 7 (alleging that "[t]his Jail Administration do not respect people constitutional Rights [sic]" and that he "went through the right legal procedures as it says within the rule book," but no relief was provided). There is no constitutional right to jail grievance procedures, however, so

---

[4] Bowens includes several complaints under the heading "Violation of My Constitutional Rights," including his claim that grievance procedures were not followed, his complaint about excessive noise, and his complaint about lack of access to legal materials. Doc. 1 at 7-8. However, the only relief he requests related to any of these claims is an injunction requiring a law library. *Id.* at 6. Despite the lack of relief requested, the Court construes Bowens' allegations as distinct claims.

procedural problems arising from the processing of a grievance cannot support a § 1983 claim. *See Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005) (inmate had no liberty interest in access to prison's voluntarily established inmate grievance procedures, so corrections officials' failure to take corrective action could not constitute a violation of his due process rights, thus dismissal of § 1983 claim was proper). Accordingly Bowens' claims related to problems with the grievance procedure should be **DISMISSED**.

## F. Excessive Noise

Bowens' complaints about the grievance procedure are related to a medical grievance that he submitted. *See* doc. 1 at 7-8. He alleges that he requested that he be moved to the "central medical dorm" because the noise in his current housing is excessive and aggravates his hypertension. *Id.* at 8 (alleging, in unedited form, that "I am a senior citizen and I gotto endure all this yelling and unnecessary noise, is just stressing me out with having hypertension problem, and the last time my blood pressure was check it was very high, 220 over 125, in a noise environment like this it will always be high"). He raised the issue with defendant Hein and an unidentified lieutenant, to no avail. *Id.* at 7.

In extreme circumstances, exposure to noise has been recognized to violate the Eighth Amendment. *See Sterling v. Smith*, 2007 WL 781274 at * 3 (S.D. Ga. Mar. 8, 2007) (collecting cases). However, such cases involved exceptionally loud and persistent noise. *See id.* (cases where noise amounted to Eighth Amendment violation "involved incessant noise throughout the day and night, which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss"). Bowens' allegations of "yelling and unnecessary noise" that is "stressing [him] out," doc. 1 at 8, is not "beyond that which one would expect to be part of a typical prison environment, noise of a type and degree amounting to no more than a mere annoyance. Such allegations, therefore, do not state a cognizable claim under § 1983." *Sterling*, 2007 WL 781274 at * 3. Accordingly, Bowens' claim concerning his exposure to unnecessary noise should be **DISMISSED**.

## G. Access to legal materials

Bowens alleges that "[t]here isn't even a law library here to study or d[o] any type of research on your case." Doc. 1 at 8. It is true that prisoners may have a right to legal research material (such as where they have no right to counsel) as a component of their right to meaningful

access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977).

Violations of that right, however, are only actionable upon showing some

injury, "such as a denial or dismissal of a direct appeal, habeas petition

or civil rights case that results from actions of prison officials." *See*

*Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998). Since

Bowens does not allege any such injury, his claims concerning his access

to legal materials should be **DISMISSED**.

## H. "Sanitation and Living Condition" Claim

Bowens contends that living conditions at the jail are so unsanitary

that they violate his rights. Doc. 1 at 9 (alleging, in unedited form, that

"[t]he cleaning supplies we do get, it's not even strong enough to kill any

kind of germs, bacterial, mildew and mold in these showers, along with

stink fruit flies flying around coming from the shower drains and paint is

peeling off the shower walls it's a eye sore to see this kind of living

condition day in day out"). The unsanitary conditions that Bowens

alleges, however, are not sufficiently serious to satisfy the objective

component of an Eighth Amendment conditions-of-confinement claim.

*See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotes and cites omitted)

("[E]xtreme deprivations are required to make out a conditions-of-

confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, [Cit.], only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."). He at most advances his opinion about the inefficacy of his institution's cleaning agents (and thus, that they enable mold, mildew, bacteria, etc.), but never does he plead the extreme squalor that *Hudson* demands. In the absence of any allegations of sufficiently serious conditions, Bowens' claim should be **DISMISSED**.

## I. Food Service Claims

Bowens next alleges that jail administrators have violated his rights by consistently serving improperly stored food. Doc. 1 at 10-11. "The Constitution requires that prisoners be provided reasonably adequate food," but "[t]he fact that . . . food . . . sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotes and cite omitted). If the food provided is of such low quality that it presents a threat to an inmate's physical health, however, it may violate the Eighth Amendment. *See, e.g., Drake v. Valasco*, 207 F. Supp. 2d 809, 812 (N.D.

12

Ill. 2002) (finding inmate stated claim where he alleged unsanitary food preparation practices interfered with treatment of and recovery from an ulcer, cirrhosis of the liver, and Hepatitis B and C).

Bowens does not allege that the food he is provided constitutes a threat to his safety. He complains that the jail consistently serves hot food that has been allowed to cool. Doc. 1 at 10 (alleging, in unedited form, that "[t]he kitchen is using a cold serving box instead of hot food box to keep the food hot once it is fix. Once the kitchen fix the food it set in there for at lease 30 mins. before the officers start serving it. By the time it get around to the dorms it's cold."). Consuming the improperly stored food, he claims, makes him uncomfortable. *Id.* (alleging, in unedited form, that "[d]ue to eating this cold food now I have too take medication for acid flex and heartburn from eating this cold food, it's harder to digest and breakdown by your digesting system costing it to over work."). Unpleasantness, however, is not sufficient to support an Eighth Amendment claim.[5] Accordingly, Bowens' claim that the manner

---

[5] Bowens' allegations are also insufficient to support an Eighth Amendment claim based on a potential risk to his health. Even assuming that Bowens' acid reflux and heartburn were serious medical conditions -- there is authority that they are not, *see Ross v. McGinnis*, 2004 WL 1125177 at * 10 (W.D.N.Y. Mar. 29, 2004) ("Plaintiff's complaints of abdominal pain, vomiting, [and] heartburn [among other complaints] . . . did not constitute a serious medical need.") -- he alleges that he is receiving

in which his food is served violates his constitutional right should be **DISMISSED**.

Bowens further alleges that the jail's food service provides insufficient nutrition. *See* doc. 1 at 10-11 (alleging that he is "not getting the right amount of nutrition and calories a day" and is "deprived of fruit and fruit juice everyday"). "The Eighth Amendment requires jails to provide inmates with meals that contain sufficient nutritional value to preserve health." *Lamb v. Scott*, 2011 WL 1559386, at * 4 (N.D. Fla. April 8, 2011) (citing *Smith v. Sullivan*, 553 F.2d 373. 380 (5th Cir. 1977)), *adopted* 2011 WL 1543957 (N.D. Fla. April 25, 2011). However, conclusory allegations that the food service fails to conform to nutritional recommendations are not sufficient. *See id.* ("Plaintiff's allegations that the servings of fruits and vegetables do not conform to a 'nationally cited

---

medication, which shows that the jail officials are not "deliberately indifferent" to his condition. *See Hall v. Tyszkiewicz*, 28 F. App'x 493, 495 (6th Cir. 2002) (summary judgment against plaintiff affirmed because his "disagreement . . . concerning the proper medication and medical aids [for his esophageal reflux] does not evidence deliberate indifference," where he "was receiving treatment for his condition"). And he may have a point that he shouldn't have to take medications to compensate for food he finds inferior, but that claim travels on a medical (dietary) expert conclusion (but for the food, claimed medical issues would not exist), not facts within the meaning of the pleading standards cited *supra*, n. 2. *Cf., Venturi v. Boyd*, 2014 WL 5824641 at * 4 (N.D. Ala. Nov. 10, 2014) ("The plaintiff's general assertion that the amount of food served at the jail failed to meet unidentified state or federal guidelines is conclusory and fails to show that the meals fell short of the minimum constitutional standards").

14

nutritional standard,' does not amount to an Eighth Amendment violation"); *Venturi*, 2014 WL 5824641 at * 4 ("The plaintiff's general assertion that the amount of food served at the jail failed to meet unidentified state or federal guidelines is conclusory and fails to show that the meals fell short of the minimum constitutional standards"). Bowens' food claim, therefore, should be **DISMISSED**.[6]

## J. "Safety Code Violation" Claim

Finally, Bowens alleges that the jail's cells lack any means to allow an inmate in distress to communicate with guards. Doc. 1 at 5. If an inmate suffers a medical emergency during "lockdown," his only alternative is to "kick out the gate in order[] to get the office attention [sic] in the control booth." *Id.* Bowens suffers from medical conditions (Hepatitis C and hypertension) that, he claims, put him at special risk for a debilitating medical emergency. *Id.* at 5, 7 (he alleges, in unedited form, "I having these chronic illness Hepatitis (C) and Hypertension on

---

[6] Even assuming that Bowens' allegations were sufficient to satisfy the objective aspect of an Eighth Amendment claim, his claim would still fail to satisfy the subjective aspect. He alleges that he notified jail staff, including defendant Hein, about the improper storage of his food, but not that he has complained to anyone about the amount or variety of his food. *Id.* at 10-11. Since he has not alleged that officials had any subjective knowledge of the risk posed by the amount and type of food served, and disregarded it, his claim also fails on that basis. *See Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 865 (11th Cir. 2008).

the other hand can cause seizures, stroke, health attack or even death. Under one of these circumstances a person don't have time to be kicking on no cell gate or wave a towel to get and office attention."). He requests the installation of a system that allows inmates to signal an emergency from inside their cells. *Id.* at 6 (requesting, in unedited form, that the Court "make Liberty County Jail too replace all speaks within the cell with speaks that has speaks with emergency indication buttons").

The Eighth Amendment protects prisoners against conditions of confinement that subject them to a substantial risk of future harm. *See Helling v. McKinney*, 509 U.S. 25, 33-4 (1993). Eighth Amendment claims, including claims based on exposure to risk of future harm, require satisfaction of both objective and subjective elements. *Id.* at 35. The objective element requires allegation of conditions that are, objectively, so extreme that they pose a "substantial risk of serious harm to [a plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective element -- "deliberate indifference" -- requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Id.* at 837. Bowens' "safety code" claim fails on both the objective and subjective elements.

The objective element of an Eighth Amendment claim requires allegation of a risk "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36; *see also Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The risk posed by the lack of an emergency call button is not sufficiently serious to state a claim. *See Strange v. Milford*, 2010 WL 5350403 at * 2-3 (M.D. Ga. Dec. 21, 2010) (dismissing conditions-of-confinement claim, including allegation of "no panic button in the event emergencies [sic]," for failure to allege objectively serious condition); *see also Williams v. Cass Cty. Sheriff Dep't*, 2009 WL 2370713 at * 4 (W.D. Mich. July 30, 2009) (citing *Parsons v. Wilkinson*, 1998 WL 791810 at *2 (6th Cir. Nov. 4 1998)) ("The failure to provide an emergency call button, standing alone, does not constitute deliberate indifference.") His claim, therefore, should be **DISMISSED**.

Bowens has also failed to allege that any of the defendants are subjectively aware of the risks he alleges. He states that the lack of emergency contact buttons is a "failure to comply to Safety Code rules," allegedly derived from various sources (*e.g.* "the laws of the State of Georgia and of the United States," and "Georgia Model Jail Standard, Policies, Procedures, Rules and Regulations described within the law [sic]"). Doc. 1 at 5. Discrepancies between such policies and the facilities at Liberty County Jail might constitute a fact from which the risk could be inferred, but they do not show that any of the defendants actually drew such an inference and then disregarded the risk. Bowens' statement of his claim lacks any allegation at all concerning any defendant's knowledge of the allegedly unsafe condition. *See* doc. 1 at 5, 7. His failure to allege facts establishing any defendant's deliberate indifference to his health or safety is fatal to his "safety code" claim.

## III.    CONCLUSION

To summarize, Bowens has failed to state any viable claim under 42 U.S.C. § 1983. Where a *pro se* plaintiff has failed to state a claim through artless drafting, the Court may afford them a second chance. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part*

18

by *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F. 3d 541, 542 & n. 1 (11th Cir. 2002) (en banc); *see also Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). "However, a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins*, 620 F. App'x at 711 (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). None of Bowens' claims appear amendable.[7] Accordingly, his Complaint should be **DISMISSED with prejudice**.

Meanwhile, it is time for plaintiff to pay his $350 filing fee. His furnished account information shows that he has had a $ 0.14 average monthly balance and $ 0.00 in monthly deposits in his prison account during the past six months. Doc. 4. He therefore owes an initial partial filing fee of $ 0.03. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) also shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk

---

[7] Despite the lack of any apparent basis for viable amendment, Bowens' opportunity to object to this report and recommendation within 14 days of service, see *infra*, affords him an opportunity to resuscitate his case. He may also submit an Amended Complaint during that period, if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at * 2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503 at * 1 (W.D. Mich. Jan. 19, 2011)).

each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

The Clerk is **DIRECTED** to send this Order to Bowens' account custodian immediately. In the event he is transferred to another institution, plaintiff's present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this _4TH_ day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA